**UNITED STATES of America, Appellee,**

v.

**Raymond Lester SPAAR, Appellant.**

**No. 83–2718.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 8, 1984.

Decided Nov. 15, 1984.

---

Daniel R. Moen, Aberdeen, S.D., for appellant.

Raymond P. Murley, Sioux Falls, S.D., for appellee.

Before ARNOLD, FAGG and BOWMAN, Circuit Judges.

BOWMAN, Circuit Judge.

In February 1981, Raylene Preszler filed for an income tax refund. In May 1981, Raymond Spaar and Preszler began living together in her apartment. During the course of their relationship, only Preszler was employed.

On or about May 22, 1981 the Internal Revenue Service (IRS) mailed Preszler a Treasury check in the amount of $358.47 as a tax refund. Preszler never received the check. In response to Preszler's inquiries, the IRS informed her that the check had been mailed. Preszler requested that the IRS trace the check.

On June 3, 1981, Spaar appeared at Preszler's bank in Aberdeen, South Dakota with the Treasury check in question. The check was endorsed on the reverse side "Raylene Preszler" and beneath that endorsement was the signature "Ray L. Spaar." *See* Exhibit No. 3. Spaar deposited $45 into Preszler's checking account and took the remaining $313.47 in cash.

In September 1981, Preszler terminated her relationship with Spaar when she discovered that Spaar had been using her apartment to meet with another woman. In October 1981, the trace on the Treasury check was completed and the Secret Service began a criminal investigation. Spaar was indicted on February 15, 1983 on one count of forgery and one count of uttering a forged instrument under 18 U.S.C. § 495.

At trial Spaar claimed that Preszler had given him the Treasury check already signed, and had told him to deposit $45 in her checking account and to get the remainder in cash. He admitted signing his name beneath Preszler's endorsement and cashing the check at the bank. At trial Spaar's attorney intimated that Preszler caused the forgery charge to be brought against Spaar to seek revenge because she felt "used." Trial transcript at 19–20, 24, 26–27. Preszler testified that she never received or signed the check, and that she never authorized Spaar to sign it for her or to cash it.

The prosecution presented three Secret Service agents as witnesses: an agent who had interviewed Spaar while investigating the missing check, a fingerprint specialist, and a handwriting expert. The first agent, Eugene Heller, testified that in August 1982, approximately one year after the forgery occurred, he questioned Spaar about the check and Spaar denied having any knowledge of it. Spaar admitted at trial that he lied to Agent Heller about the check, but claimed that he did so because he had a criminal record and was afraid that if he admitted anything he might get in trouble.

The fingerprint specialist, Robert Ball, testified that he identified Spaar's fingerprint on the back of the Treasury check. The handwriting expert, Thomas Smith, testified that in his opinion, the signature of Preszler on the Treasury check had been traced. He explained that the "Raylene Preszler" signature had all the signs of a tracing: heavy and deliberate strokes, blunt beginning and ending strokes, and a shaky quality throughout, while genuine signatures, in contrast, are smoothly and freely written. He could not say who did the tracing. On cross-examination he admitted that illness or intoxication might also affect an individual's handwriting.

The jury returned a verdict of guilty on both the forgery count and the uttering a forged instrument count. The District Court sentenced Spaar to two years imprisonment on the forgery count and to a consecutive two and a half year probation period on the uttering count.

Spaar appeals from his conviction on both counts. For reversal, Spaar argues that the District Court [1] erred in denying his motion for a directed verdict of acquittal and in refusing to ask the jury panel on voir dire certain questions he had requested. We affirm.

1. The Honorable Donald J. Porter, United States District Judge for the District of South Dakota.

## I.

Spaar contends that the District Court erred in denying his motion for acquittal because the government presented no evidence showing that Spaar wrote Preszler's signature on the Treasury check. In reviewing denials of motions for acquittal, this Court has applied the following test:

A motion for acquittal should be granted only where the evidence, viewed in the light most favorable to the government, is such that a reasonably minded jury must have a reasonable doubt as to the existence of any of the essential elements of the crime charged.

*United States v. Brim*, 630 F.2d 1307, 1311 (8th Cir.1980), *cert. denied*, 452 U.S. 966, 101 S.Ct. 3121, 69 L.Ed.2d 980 (1981). Additionally, in reviewing the sufficiency of the evidence the Court must resolve all conflicts in favor of the jury verdict, *Klein v. United States*, 728 F.2d 1074, 1075 (8th Cir.1984), and must accept all reasonable inferences which tend to support the verdict, *United States v. Wells*, 721 F.2d 1160, 1161 (8th Cir.1983).

■ In the present case, the act of writing Preszler's endorsement on the back of the Treasury check was clearly an essential element of the forgery charge. Spaar contends that since the handwriting expert could not positively identify him as the person who traced the signature and since no other witness specifically identified him as the forger, the evidence was insufficient to prove that he signed Ms. Preszler's name.

■ Although there is no direct evidence of Spaar's forgery, there is ample circumstantial evidence from which the jury reasonably could have inferred that Spaar wrote Preszler's signature on the check. Preszler testified that she never saw or signed the check, and the handwriting expert stated that the signature was probably traced. Since Spaar lived with Preszler at the time the check was mailed and had access to her mail, the jury could reasonably have found that Spaar intercepted the check and traced Preszler's signature on it.

Spaar admitted signing his own name to and cashing the check. His fingerprint was found on it. Spaar had a clear monetary motive for the forgery. In addition, the jury reasonably might have taken into consideration the fact that Spaar initially denied any knowledge of the check to Heller, but later admitted that he cashed it. "Circumstantial evidence is 'intrinsically as probative as direct evidence' and may be the sole support for a conviction." *Klein v. United States*, 728 F.2d at 1075 (quoting *United States v. Two Eagle*, 633 F.2d 93, 97 (8th Cir.1980)).

The government has shown facts from which a reasonable jury could infer that Spaar took the check from Preszler's mail sometime after May 22, 1981, had possession of it until he cashed it on June 3, 1981, and traced Preszler's signature during that time. Although Spaar claimed that Preszler had given him the Treasury check already signed, Preszler denies that she ever saw the check. The jury could reasonably have believed that the check had no signature on it when Spaar received it. There is no suggestion in the evidence that the check ever left Spaar's possession so that someone else could have signed it. We hold that the District Court did not err in denying Spaar's motion for acquittal.

## II.

Spaar also contends that the District Court committed reversible error by refusing to ask the prospective jurors certain voir dire questions he proposed. Spaar's attorney had requested that the court ask the following questions:

Are you or any of your immediate family or close friends connected in any way with any state, federal, or other law enforcement agency, such as a sheriff's or police office, the FBI, or a state's attorney's office? Have you or any of your immediate family or friends ever been connected with any such law enforcement agencies?

Do you feel that the testimony of an FBI agent, or treasury agent, or any other law enforcement officer is entitled to any

more credence than that of other witnesses merely because he is a law enforcement officer? Is there any reason why you would feel unable to keep a completely open mind and give the testimony of such officer the same type of consideration in accordance with the Court's instructions as you would give to the testimony of other witnesses, and no more?

Designated Record at 4. The District Court denied the request, and the record is silent on why it was denied. Spaar now argues that the court's refusal to ask these questions impaired his ability to select an impartial jury and is reversible error.

Voir dire plays a critical role in assuring criminal defendants that their Sixth Amendment right to an impartial jury will be honored. Without an adequate voir dire the trial judge cannot fulfill his responsibility to remove prospective jurors who may be biased and defense counsel cannot intelligently exercise peremptory challenges. *Rosales-Lopez v. United States*, 451 U.S. 182, 188, 101 S.Ct. 1629, 1634, 68 L.Ed.2d 22 (1981). But appellate courts cannot easily second-guess the conclusions of the trial judge who heard and observed the prospective jurors, and thus district courts have been accorded broad discretion in determining how best to conduct voir dire. *Id.* at 189. This discretion, however, must be exercised consistent with "the essential demands of fairness." *Aldridge v. United States*, 283 U.S. 308, 310, 51 S.Ct. 470, 471, 75 L.Ed. 1054 (1931); *United States v. Cassel*, 668 F.2d 969, 971 (8th Cir.), *cert. denied*, 457 U.S. 1132, 102 S.Ct. 2957, 73 L.Ed.2d 1348 (1982). In reviewing a district court's refusal to ask questions during voir dire, the central inquiry is whether the judge's overall examination, coupled with his charge to the jury, adequately protects the defendant from prejudice. *See United States v. Cassel*, 668 F.2d at 971.

Turning first to the District Court's refusal to ask Spaar's question about connections with law enforcement officers, an examination of the portion of the voir dire transcript in the record on appeal reveals that the court did, in its own words, question the jury panel about connections to law enforcement officers. The District Court also asked the venirepersons who admitted such a connection whether they could fairly look at the evidence, or whether they would be predisposed to credit the testimony of law enforcement personnel.

A trial court is not required to put a question in any particular form, or to ask any particular number of questions simply because a party makes such a request. *Ham v. South Carolina*, 409 U.S. 524, 527, 93 S.Ct. 848, 850, 35 L.Ed.2d 46 (1973); *United States v. Thompson*, 490 F.2d 1218, 1222 (8th Cir.1974). The District Court's manner of questioning the jury panel about connections to law enforcement officers here reasonably assured Spaar an opportunity to detect prejudice among those venirepersons who had connections to law enforcement personnel. We therefore hold that the District Court did not err in this aspect of its voir dire examination of the jury panel.

We turn next to Spaar's contention that the District Court committed reversible error by failing to ask each venireperson whether he or she was predisposed to credit the testimony of a witness simply because that witness is a law enforcement official. Spaar contends that this failure caused him not to have the opportunity to detect prejudice in the panel as a whole and therefore denied him his right to be tried by an impartial jury.

In *Brown v. United States*, 338 F.2d 543 (D.C.Cir.1964), Judge (now Chief Justice) Burger stated that:

when important testimony is anticipated from certain categories of witnesses, whose official or semi-official status is such that a juror might reasonably be more, or less, inclined to credit their testimony, a query as to whether a juror would have such an inclination is not only appropriate but should be given if requested. Failure to make appropriate inquiry, when requested, does not necessarily require reversal; the issue turns on the degree of impact which the testi-

mony in question would be likely to have had on the jury and what part such testimony played on the jury as a whole. 338 F.2d at 545. *Accord Ross v. United States,* 374 F.2d 97, 105 (8th Cir.), *cert. denied,* 389 U.S. 882, 88 S.Ct. 130, 19 L.Ed.2d 177 (1967); *United States v. Baldwin,* 607 F.2d 1295 (9th Cir.1979).

We agree that a voir dire inquiry of the type requested by Spaar, as stated in *Brown,* "is not only appropriate but should be given if requested." 338 F.2d at 545. We also agree with the position taken in *Brown* that whether failure to make the requested inquiry requires reversal of the conviction depends upon the circumstances of the case.

In the present case, it appears from the transcript that Spaar never put the credibility of any of the three government agents at issue. Each agent testified to certain facts. Agent Heller testified that Spaar initially had told him that he never had seen the Treasury check and that his signature on that check was a forgery. Spaar admitted this conversation. Transcript at 81, 84, 89–90. Agent Ball testified that the only recognizable fingerprint on the check belonged to Spaar. Spaar was willing to stipulate to that fact. *Id.* at 47. Agent Smith testified that Preszler's signature on the check looked like a tracing, but he could not determine who had actually signed the check. Smith also testified that Spaar's signature on the check was actually Spaar's. Spaar admitted signing the Treasury check. *Id.* at 75, 76.

Spaar attempted to draw inferences from these uncontradicted facts different from those the prosecution sought to draw. *See United States v. Gore,* 435 F.2d 1110, 1113 (4th Cir.1970). He testified that he lied to Heller about possessing the check because he was afraid, and he implied that Preszler had initiated the complaint to get even with him for "using" her. But Spaar at no time contested the credibility of the agents' testimony. Rather, the only witness whose credibility Spaar put at issue was Preszler.

As noted earlier in this opinion, the District Court did ask all venirepersons with

any connection to law enforcement activities whether they felt they would, as a result of that connection, give more credence to law enforcement agent testimony. We further note that in instructing the jury, the District Court cautioned that the jury should consider the relationship of a witness to the government or to the defendant in weighing that witness's testimony. Transcript at 101. *See United States v. Jackson,* 448 F.2d 539, 542 (5th Cir.1971), *cert. denied,* 404 U.S. 1063, 92 S.Ct. 750, 30 L.Ed.2d 775 (1972).

We believe it would be the better practice to make the requested inquiry on voir dire when testimony is anticipated from government agents. In view of the particular circumstances of this case, however, we hold that the failure of the District Court to ask the jury panel whether any venireperson might be inclined to give more credence to the testimony of a witness simply because the witness is a law enforcement agent does not require the reversal of Spaar's convictions.

The convictions are affirmed.