# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-2084
No. 97-3325

_____

| | | |
|---|---|---|
| Bert L. Hunter, | * | |
| | * | |
| Petitioner - Appellant, | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Michael Bowersox, | * | |
| | * | |
| Respondent - Appellee. | * | |

_____

Submitted:  September 21, 1998
Filed:  March 22, 1999

_____

Before McMILLIAN, LOKEN, and HANSEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

Bert L. Hunter, a Missouri inmate under sentence of death, appeals the denial of his petition for a writ of habeas corpus.  The district court[1] granted a certificate of appealability on three issues:  whether Hunter's guilty plea was valid; whether the trial court's sentencing process was constitutionally proper; and whether Hunter was denied effective assistance of counsel.  We granted a certificate on a fourth issue,

_____

[1]The HONORABLE DEAN WHIPPLE, United States District Judge for the Western District of Missouri.

whether the district court should have held an evidentiary hearing, and now affirm.

## I. Background

On December 15, 1988, Hunter and friend Tomas Ervin, armed and planning to rob Richard Hodges, forced their way into the Jefferson City home of Mildred Hodges and her son, Richard. After binding Mildred Hodges with duct tape, Hunter began searching the house for money and valuables. As Ervin tied up Richard Hodges, Mildred broke free and pulled the mask off Ervin's face, and Ervin called out Hunter's name. Fearful they could now be identified, Hunter and Ervin decided to kill their victims. They placed plastic bags over the heads of Mildred and Richard. Hunter held Richard's nose until he suffocated.

State Court Proceedings. In March 1989, the State of Missouri charged Hunter with two counts of first degree murder and one count of first degree robbery. Hunter advised appointed defense counsel that he wanted to plead guilty but remained silent at his arraignment. The court entered a plea of not guilty on all counts and ordered a psychiatric evaluation.

At a pretrial hearing in July 1989, Hunter told the court he wanted to plead guilty, despite the contrary advice of counsel. The court adjourned proceedings to give Hunter and his attorney time to reconcile their differences, and to give Hunter an opportunity to talk with family, friends, or clergy. Four days later, Hunter again appeared, confirmed a continuing difference of opinion with counsel, and asked the court to allow him to proceed *pro se* and plead guilty. After questioning Hunter, the court allowed him to proceed *pro se* but asked appointed counsel to remain during the hearing to answer any questions Hunter might have. The court and standby counsel then questioned Hunter at length on his decision to plead guilty and forgo his right to trial by jury. The court then accepted Hunter's guilty plea, finding it was entered

knowingly, intelligently, and voluntarily, and ordered a second mental health evaluation and a presentence investigation report ("PSR").

In October 1989, Hunter moved to withdraw his guilty plea, arguing the plea was coerced by depression caused by cocaine withdrawal and the coercive conditions of his confinement, and that there was no factual basis for the plea. The motion was denied after a hearing. On February 15, 1990, the court held a lengthy sentencing hearing at which Hunter presented evidence of mitigating circumstances through several witnesses. The court nonetheless found specific aggravating circumstances and sentenced Hunter to death on the two murder convictions and to life in prison on the robbery conviction. Hunter appealed, and the appeal was stayed pending state postconviction proceedings under Missouri Rule of Criminal Procedure 24.035. The postconviction court denied Hunter relief after an evidentiary hearing, and Hunter again appealed. After consolidating the two appeals, the Missouri Supreme Court affirmed the convictions, the sentences, and the denial of Rule 24.035 relief. See State v. Hunter, 840 S.W.2d 850 (Mo. banc 1992), cert. denied, 509 U.S. 926 (1993). Following the denial of Hunter's petition for a writ of certiorari, a *pro se* petition for a writ of habeas corpus was filed in his name in the Western District of Missouri.

District Court Proceedings. In May 1994, over the objections of court appointed counsel, Mary-Louise Moran, Hunter moved to dismiss the habeas petition, arguing it was filed without his knowledge or consent. The district court denied the motion, Hunter appealed, and we granted a writ of prohibition. In re Hunter, No. 94-8080 (8th Cir. Aug 2, 1994). The district court then dismissed the petition without prejudice.

In August 1994, Hunter filed a second *pro se* habeas petition in the Eastern District of Missouri. When the case was transferred to the Western District, Hunter refused to acknowledge he had authorized it. The district court concluded no authorized petition had been filed and denied a stay of execution. Hunter appealed.

-3-

We granted a limited stay of execution and remanded. The district court then extended the stay of execution and appointed Ms. Moran as counsel. Hunter asked the court to appoint new counsel but refused to explain why he was dissatisfied with Ms. Moran. The court denied the motion but appointed co-counsel, Cheryl Rafert, who is Hunter's counsel on this appeal. In the following months, Hunter persistently refused to cooperate with Ms. Moran or to communicate with the court. After ordering Hunter to show cause why this conduct did not warrant dismissal, the district court dismissed the petition with prejudice, and Hunter again appealed. Concluding his conduct was improper but he should have one more chance to proceed on the merits, we reversed the dismissal and remanded. See Hunter v. Delo, 62 F.3d 271, 275-76 (8th Cir. 1995).

In February 1996, Hunter filed an amended habeas petition alleging his conviction and sentence violated his constitutional rights because:

-- his guilty plea was invalid;
-- he unknowingly waived the right to sentencing by a jury;
-- his waivers of counsel and the privilege against self-incrimination were invalid;
-- there was no factual basis for the guilty plea;
-- the trial court judge was biased;
-- the trial court's sentencing was arbitrary and improper;
-- he was denied effective assistance of counsel;
-- his sentence was disproportionate; and
-- he was abandoned by his state postconviction counsel.

The district court denied the petition without an evidentiary hearing in November 1996 and later summarily denied Hunter's Rule 59(e) motion to amend the judgment. Hunter appealed and applied to the district court for a certificate of probable cause or a certificate of appealability. The court issued a certificate of appealability limited

to three issues. Hunter then applied to this court for an expanded certificate of appealability and also separately appealed the district court's partial denial. We consolidated the two appeals, expanded the certificate to include a fourth issue, and otherwise denied Hunter's application. We will first address Hunter's contention that the district court and this court erred in not granting him an unlimited certificate of probable cause or certificate of appealability. We will then turn to the merits of the four issues on which the certificate was granted.

## II. Certificate of Appealability Issues

Chapter 153 of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") amended 28 U.S.C. § 2253 to require state habeas petitioners to seek a certificate of appealability ("COA"), rather than the certificate of probable cause required under prior law. See 28 U.S.C. § 2253(c)(1). The substantive standards for granting the two certificates are identical -- a substantial showing of the denial of a federal constitutional right. See Ramsey v. Bowersox, 149 F.3d 749, 759 (8th Cir. 1998). But AEDPA changed the scope of a certificate. "[A] certificate of probable cause place[d] the *case* before the court of appeals, but a certificate of appealability must identify each *issue* meeting the 'substantial showing' standard." Herrera v. United States, 96 F.3d 1010, 1012 (7th Cir. 1996). Hunter argues we erred in limiting the issues he may brief and argue on appeal because (1) the COA provisions of AEDPA do not apply to habeas petitions filed prior to AEDPA's effective date, April 24, 1996; and (2) AEDPA's COA provisions do not in any event limit the issues reviewable on appeal.[2]

---

[2]Hunter also argues the district court violated F.R.A.P. 22(b) by failing to explain why it declined to certify other issues for appellate review. We disagree. For each issue on which a COA was denied, the district court stated that Hunter had not made a substantial showing of the denial of a constitutional right. Hunter then applied to this court for a COA on the issues denied by the district court. We denied that application except as to the issue of the denial of an evidentiary hearing. The

(1)  In Tiedeman v. Benson, 122 F.3d 518, 520-21 (8th Cir. 1997), we applied AEDPA's new appellate procedures to an appeal filed after the statute's effective date, even though the habeas petition was initially filed prior to that date.  Hunter's amended habeas petition was filed on February 26, 1996.  His notice of appeal from the denial of that petition was filed in April 1997, long after AEDPA went into effect.  Hunter argues Tiedeman is contrary to the Supreme Court's decision in Lindh v. Murphy, 117 S. Ct. 2059 (1997).  That issue was expressly considered in Tiedeman, and we have since declined numerous requests to reconsider Tiedeman en banc.  This panel is bound to follow Tiedeman.  Thus, Hunter's appeal is subject to AEDPA's COA requirement.

(2)  Hunter next argues that AEDPA does not require him to obtain a COA for each issue he wishes to present for appellate review.  This contention is foreclosed by our decision in Ramsey, 149 F.3d at 759, where we held that the plain language of § 2253(c)(3) limits appellate review to the issues specified in the COA.  Accord Murray v. United States, 145 F.3d 1249, 1250-51 (11th Cir. 1998); Roberts v. Bowersox, 137 F.3d 1062, 1068 (8th Cir. 1998), cert. denied, No. 98-6386, 1999 WL 8123 (Jan. 11, 1999); Lackey v. Johnson, 116 F.3d 149, 151-52 (5th Cir. 1997).  Hunter suggests it is unfair to impose this "radical change" without an advance warning such as the adoption of a local rule.  But under prior law we occasionally screened out meritless appeal issues by limiting certificates of probable cause.  See Camillo v. Wyrick, 640 F.2d 931, 934 (8th Cir. 1981).  In AEDPA, Congress directed us to use this authority in a more systematic fashion.  The result is not to eliminate our consideration of meritless issues altogether, but rather to resolve such issues expeditiously so that counsel will focus their briefs and arguments on the issues that matter, that is, those on which there is some likelihood of appellate relief.

### III.  Validity of the Guilty Plea

record on appeal reflects full compliance with F.R.A.P. 22(b).

Hunter argues his state court guilty plea was invalid. He "lacked the mental capacity to enter a voluntary, knowing, and intelligent plea of guilty," Hunter explains, because he was suffering from clinical depression brought on by his pretrial detention in solitary confinement and by his withdrawal from cocaine. The district court granted a certificate of appealability on these issues.

A. Competency. Due process requires that a defendant be competent to plead guilty. See Pate v. Robinson, 383 U.S. 375, 384-85 (1966). In this case, the state courts expressly determined that Hunter was mentally competent to enter his plea. Under pre-AEDPA law,[3] "[a] federal court may not overturn such determinations unless it concludes that they are not 'fairly supported by the record.' See 28 U.S.C. § 2254(d)(8). . . . [A] state court's conclusion regarding a defendant's competency is entitled to such a presumption [of correctness]." Demosthenes v. Baal, 495 U.S. 731, 735 (1990).

In this case, the trial court ordered a mental health evaluation before Hunter entered his plea. The evaluation was incomplete because Hunter refused to cooperate, but the evaluators were able to complete social and psychological assessments revealing that Hunter was of average intelligence, had a history of

---

[3]Because this is a state capital case, it is potentially subject to the explicitly retroactive provisions of the new chapter 154 of Title 28 enacted in AEDPA. But chapter 154 does not apply because Missouri has not yet met the requirements of 28 U.S.C. § 2261(b) and (c). That means the provisions of chapter 153 apply, by default as it were. Do we apply the new, more restrictive standards of habeas review in chapter 153 as amended by AEDPA, 28 U.S.C. § 2254(d) and (e), because we looked to the retroactive provisions of chapter 154 in getting to this point, or do we apply the pre-AEDPA standards of review found in former 28 U.S.C. § 2254(d) because Lindh held that the chapter 153 amendments are not retroactive? Though the issue is not free from doubt, we conclude the better -- and certainly the more cautious -- reading of Lindh is that pre-AEDPA law applies to pending capital cases unless the provisions of chapter 154 apply. See 117 S. Ct. at 2067-68.

cocaine abuse, did not appear to have a psychotic disorder, was capable of assisting in his defense, and had good judgment. After the lengthy July 1989 plea hearings, the trial court ordered a further psychiatric evaluation. The psychiatrist concluded that Hunter functioned at bright-average intelligence, understood the charges against him and the options available to him, was capable of entering a voluntary and intelligent plea, and had chosen to plead guilty because he wished to take responsibility for his participation in the crime and did not want to spend the rest of his life in prison. In October 1989, Hunter moved to withdraw his plea, represented by the same attorney he had earlier discharged. The court held an evidentiary hearing. A pharmacologist testified that Hunter's withdrawal from cocaine could have rendered him clinically depressed and affected his ability to make a rational decision to plead guilty. The witness acknowledged, however, that he knew of no case in which the effects of cocaine withdrawal persisted for longer than three or four months, whereas Hunter had been in custody and unable to obtain cocaine for five months when he pleaded guilty. Based on this record and his extensive colloquies with Hunter in open court, the trial court denied Hunter's motion to withdraw the plea.

Hunter again challenged his plea's validity in the state postconviction proceedings, and a further evidentiary hearing was held. Clinical psychologist William O'Connor testified that at the time of the guilty plea Hunter suffered from "major depression, single episode" that caused him to want to die. Hunter should not have been allowed to represent himself and plead guilty, Dr. O'Connor opined, because "emotionally" Hunter did not have a voluntary choice. Hunter was not confused, retarded, or out of touch, Dr. O'Connor explained. "The problem is not cognitive. It's emotional." In a thorough opinion, the postconviction trial court found that Hunter "was not suffering from depression amounting to a mental disease or defect," that he was competent at the time of the guilty plea hearing and had the ability to waive his constitutional rights, and that his competence was demonstrated by his demeanor and conduct as observed on the videotape of the guilty plea hearing. In an equally thorough opinion, the Missouri Supreme Court upheld those findings.

See 840 S.W.2d at 862-63.  After careful review, we agree with the district court that the record fully supports these findings.  Hunter has not overcome their presumption of correctness.

B. Voluntary, Knowing, and Intelligent.    For Hunter's guilty plea to be constitutionally valid, not only must he have been competent to stand trial, but his waiver of the right to counsel and the right to stand trial must have been "knowing and voluntary."  Godinez v. Moran, 509 U.S. 389, 400 (1993); see Brady v. United States, 397 U.S. 742, 748 (1970).  This requirement ensures that a defendant "understand[s] the significance and consequences of a particular decision." Godinez, 509 U.S. 401 n. 12.  Whether a plea of guilty was constitutionally voluntary is a question of federal law, but the state courts' underlying findings of fact are entitled to the presumption of correctness in former 28 U.S.C. § 2254(d).  See Marshall v. Lonberger, 459 U.S. 422, 431-32 (1983).  That includes findings as to Hunter's credibility.  See Demosthenes, 495 U.S. at 735.

While awaiting trial, Hunter was held in administrative segregation at the Missouri State Penitentiary.  He argues the conditions of this confinement "coerced him into pleading guilty," as confirmed by statements he made during the state court hearings.  These include comments that his housing unit, 5-C, was "the convict's nightmare," that he did not want to be in 5-C longer than he had to, and that he was living under "atrocious conditions."  Hunter also argues the effects of cocaine withdrawal rendered him unable to freely decide whether to plead guilty. He suggests that his demeanor during the hearings, such as "inappropriate smiling" and stating a desire to receive the death penalty,  shows that his plea was not voluntary and knowing.

The state trial court expressly found that Hunter's plea was "freely and voluntarily given . . . with full knowledge."  The court found the psychiatric evaluation ordered by the court in September 1989 more timely and credible than the post-plea evaluations and testimony by psychologist O'Connor and the

pharmacologist. The court also found that Hunter's demeanor and statements during the plea hearing evidenced a complete understanding of the charges against him and the options available to him. Applying the appropriate federal standard, the Missouri Supreme Court carefully reviewed the record and upheld the trial court's findings and conclusion that the plea was knowing and voluntary. See 840 S.W.2d at 861-62.

After careful review of the record, we conclude that the state courts' findings are entitled to the presumption of correctness, and that these findings fully support the determination that Hunter's plea of guilty was voluntary, knowing, and intelligent. Most significantly, as the state court opinions reflect, Hunter's statements at the plea hearings expressly refute the notion that his plea was being coerced either by his prior cocaine addiction or by his conditions of confinement:

> MR. CATLETT [counsel for Hunter]: And now that you've been withdrawn from [cocaine], is that a factor in your decision here today to enter a plea of guilty, the fact that you can't get cocaine right now?
>
> DEFENDANT HUNTER: No . . . pleading guilty here isn't going to help me get cocaine."
>
> *  *  *  *  *
>
> MR. CATLETT: I understand that [cocaine is] an extremely addictive drug, and that's my concern. But is that addiction that you have being a factor in your entering this plea today?
>
> DEFENDANT HUNTER: No. I'll grant you this: that my using cocaine was a factor in me committing crimes, all right, but it isn't a factor in me pleading guilty or not guilty.
>
> *  *  *  *  *

-10-

MR. CATLETT: Now, the fact that you're in that situation, locked down in solitary confinement, being mistreated, in your mind, is that a factor you have considered in deciding to enter a plea of guilty?

DEFENDANT HUNTER: Well, the only factor that that is, is a factor that, you know, I don't want to be there any longer than I have to, O.K. But the situation as a coercement? No. I wanted to plead guilty before I was ever in 5-C.

* * * * *

I'm being held in a--under atrocious conditions, you know, and that's not my motivation to plead guilty. I've been trying to plead guilty from day one.

* * * * *

I've been wanting to plead guilty since I've been arrested.

* * * * *

MR. CATLETT: Now, in discussing this plea of guilty situation, that's been your position right from the start, hasn't it? . . . To plead guilty and ask for the death penalty?

DEFENDANT HUNTER: From day one.

Based upon the post-plea testimony of the pharmacologist and Dr. O'Connor, Hunter argues that his decision to plead guilty and virtually invite the death penalty was not rational. But the Constitution does not require that a plea of guilty be rational in that sense. Rather, courts must ensure the plea "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). Hunter's plea met that constitutional standard.

-11-

## IV. Sentencing Issues

Hunter next argues -- in conclusory, shotgun fashion -- that the trial court in many ways conducted an arbitrary, improper sentencing that violated Hunter's due process, equal protection, and Eighth Amendment rights. The district court granted a COA on this issue as framed in paragraph 2.F of Hunter's COA application. We limit our review accordingly.

Hunter argues the trial court gave inadequate consideration to the substantial mitigating evidence in the sentencing record. In a capital case, the sentencing court may not exclude mitigating evidence from consideration as a matter of law. See Eddings v. Oklahoma, 455 U.S. 104, 113-115 (1982). The transcript of Hunter's sentencing hearing demonstrates that the trial court heard and expressly considered mitigating evidence. (The judge's postconviction deposition testimony is not to the contrary.) The relative *weight* the trial court gave that evidence, compared to the overwhelming evidence of multiple aggravating factors, is not a proper subject of federal habeas review. In addition, some of the cumulative mitigating evidence on which Hunter now relies was not developed until the postconviction evidentiary hearing, so it obviously could not have been considered at sentencing.

We likewise reject Hunter's contention the trial court erred in its consideration of aggravating factors. "A state court's finding of an aggravating circumstance in a particular case . . . is arbitrary or capricious if and only if no reasonable sentencer could have so concluded." Lewis v. Jeffers, 497 U.S. 764, 783 (1990). Here, substantial evidence supported the finding of three aggravating factors -- that Hunter had prior murder and serious assaultive convictions, that he murdered the Hodgeses during a robbery, and that the murder of Richard Hodges was committed during the murder of Mildred Hodges. There was no improper "double-counting" of aggravating circumstances. Cf. Lowenfield v. Phelps, 484 U.S. 231, 246 (1988).

Hunter further argues the trial court improperly considered his PSR. Because there was no timely objection, the Missouri Supreme Court reviewed this contention for plain error and found none. See Hunter, 840 S.W.2d at 866. Assuming we should apply the same standard of review, rather than consider the issue procedurally barred, see Hornbuckle v. Groose, 106 F.3d 253, 257 (8th Cir.), cert. denied, 118 S. Ct. 189 (1997), we agree with the Missouri Supreme Court that consideration of the PSR did not amount to "manifest injustice." See also State v. McMillin, 783 S.W.2d 82, 96 (Mo. banc), cert. denied, 498 U.S. 881 (1990).

Hunter also suggests the trial court improperly shifted the burden of proof to Hunter at sentencing. He offers no factual support for this allegation, and it is without merit. Also without merit is his contention the trial court failed to issue valid written findings of statutory aggravating factors. In the Warrant of Execution, the trial court found three aggravating circumstances proved beyond a reasonable doubt, and found they "outweigh[ed] the existence of any mitigating factors." This complied with the requirements of Mo. Rev. Stat. § 565.030.4. See Hunter, 840 S.W.2d at 868.

## V. Ineffective Assistance of Counsel

Hunter next argues in the most conclusory fashion that he was provided constitutionally ineffective assistance of counsel at every stage of the pretrial, plea, and sentencing proceedings. All claims of ineffective assistance up through the entry of Hunter's guilty plea are without merit because he voluntarily discharged counsel and pleaded guilty despite counsel's contrary advice. See United States v. Schmidt, 105 F.3d 82, 89-90 (2d Cir.), cert. denied, 118 S. Ct. 130 (1997); United States v. Windsor, 981 F.2d 943, 947 (7th Cir. 1992). Given Hunter's long-standing resolve to plead guilty, his contention that counsel could have done anything to dissuade Hunter from this course of action is sheer speculation. And the trial and

-13-

postconviction record clearly refute the contention that Hunter was prejudiced by counsel's failure to pursue an adequate mental health defense.

Hunter was again represented by counsel at sentencing, and he argues counsel was ineffective in numerous respects at that proceeding. Counsel's alleged failure to object to improper sentencing procedures was not prejudicial because, as we have explained, the sentencing procedures were not improper. See Carter v. Hopkins, 92 F.3d 666, 671 (1996), cert. denied, 117 S. Ct. 1113 (1997). Defense counsel called many witnesses at sentencing and then vigorously argued the mitigating circumstances which these witnesses sought to address. The trial court was not persuaded, but that does not mean counsel's assistance was ineffective. Indeed, before pronouncing sentence, the trial court told defense counsel, "You have done the best you can with what you have. . . . You don't have much with Mr. Hunter." Mindful of the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," Strickland v. Washington, 466 U.S. 668, 689 (1984), we conclude the district court and the state courts properly rejected Hunter's claims of ineffective assistance of counsel.

## VI. Denial of an Evidentiary Hearing

Hunter argues the district court erred in denying him an evidentiary habeas hearing "because Petitioner alleged facts which if proven would entitle him to relief." When the state courts have held multiple evidentiary hearings, as in this case, that is not the proper standard. See, e.g., Thatsaphone v. Weber, 137 F.3d 1041, 1045-46 (8th Cir.), cert. denied, 118 S. Ct. 1822 (1998); Clemmons v. Delo, 124 F.3d 944, 952 (8th Cir. 1997), cert. denied, 118 S. Ct. 1548 (1998). Hunter was given full hearings in the state courts. The trial court, the Rule 24.035 motion court, and the Missouri Supreme Court all made specific findings on each of the three claims on which he now seeks habeas relief. To the extent Hunter seeks to introduce facts not submitted

to the state courts,[4] he must overcome his prior procedural default by showing cause and prejudice, which he has not even attempted to do. See Keeney v. Tamayo-Reyes, 504 U.S. 1, 11 (1992); McCann v. Armontrout, 973 F.2d 655, 658 (8th Cir. 1992), cert. denied, 507 U.S. 942 (1993). To the extent Hunter simply wishes to rehash evidence previously submitted to the state courts, he has not established any of the grounds set forth in § 2254(d)(1)-(8) for overcoming the presumption of correctness to which the state court findings are otherwise entitled. See Thompson v. Keohane, 516 U.S. 99, 107-09 (1995). Though we recognized in Clemmons that the federal habeas court retains discretion to hold an evidentiary hearing even when one is not required, we conclude the district court did not abuse its discretion in denying a hearing in this case.

The judgment of the district court is affirmed. Hunter's Renewed Application for Certificate of Probable Cause to Appeal filed September 11, 1998, is denied.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[4]For example, the addendum to Hunter's brief includes a lengthy affidavit from psychologist Robert L. Smith purporting to show that Hunter's prior mental health evaluations were all inadequate. The affidavit is dated November 10, 1997, long after these appeals commenced. It was attached to a Rule 60(b) motion submitted to the district court in March 1998. We are not advised whether the district court has ruled on that motion. The affidavit is not properly part of the record on appeal.