**Pablo FLORES, Petitioner,**

v.

**John MARSHALL, Respondent.**

**No. Civ.A. 96–40141–NMG.**

United States District Court,
D. Massachusetts.

May 28, 1999.

Pablo Flores, Gardner, MA, Pro se.

Cathryn A. Neaves, Attorney General's Office, Boston, MA, for Respondent.

## MEMORANDUM AND ORDER

GORTON, District Judge.

Pending before this Court is the *pro se* petition of Pablo Flores under 28 U.S.C. § 2254 for a writ of habeas corpus (Docket No. 1). The petition was filed on July 1, 1996 and the respondent filed a motion to dismiss on March 10, 1997. On September 24, 1997 this Court accepted and adopted the Report and Recommendation of Magistrate Judge Swartwood to deny that motion. Flores filed a *motion* for writ of habeas corpus on June 18, 1998 which this Court denied on March 31, 1999, noting that the initial petition was still under consideration. Respondent filed a memorandum of law opposing the petition on January 25, 1999.

### I. Factual Background and Procedural History

On March 1, 1992 a Middlesex County grand jury returned indictments charging Flores with two counts of murder, one count of armed robbery and one count of armed assault in a dwelling in connection with an incident that occurred on February 15, 1992. On August 3, 1992, a Middlesex County grand jury returned indictments charging Flores with armed robbery and assault and battery by means of a dangerous weapon in connection with an incident that occurred on February 3, 1992.

On October 1, 1992, Flores pled guilty in Middlesex Superior Court to two counts of manslaughter, two counts of armed robbery, one count of armed assault in a dwelling and one count of assault and battery by means of a dangerous weapon. For those crimes, Flores was sentenced to two terms of 18 to 20 years and one term of three to five years, all to be served concurrently.

The prosecutor recited the following facts about the February 3, 1992 incident at the defendant's plea hearing:

> Daniel Larkin would come into this courtroom and he would testify that on that day in Lowell that Pablo Flores at knife point robbed him of $20 and his car keys, and that at some point during that robbery that Mr. Flores, while wearing a shod foot, if you will, or something on his foot, kicked Mr. Larkin.

(Plea Hr'g Tr. 20).

The prosecutor recited the following facts about the February 15, 1992 incident at the defendant's plea hearing:

> [During] the late evening hours of February 14th into the early morning hours of February 15th, Mr. Pablo Flores, Luis Flores and Alfredo Vasquez, Felix Fegeora and Renaldo Renandez, went to 46 Smith Street in Lowell for the purpose of robbing Ferman Dibersio and Jose Luis Gurerra, who lived at that particular address, of money and drugs. That they went there armed with guns. That Mr. Pablo Flores and Luis Flores went up the stairs at 46 Smith Street, to the dwelling home of Mr. Dibersio and Mr. Gurerra. That they gained entrance to that door, and that at some point in time in that apartment that Luis Flores pulled out his gun, and at that time that he pulled out his gun that Mr. Pablo Flores went out of that apartment and down the stairs and heard the gunshot which killed Luis Gurerra.
>
> During the course of that joint venture Ferman Dibersio was also shot in the head and killed, and money and

controlled substances, to wit, cocaine, were taken from that apartment at 46 Smith Street as part of the joint venture.

Following Mr. Dibersio and Mr. Gurerra being killed, these individuals fled the area of Smith Street, your honor. Those would be the facts.

(Plea Hr'g Tr. 20–21).

On November 17, 1992, Flores, acting *pro se,* filed with the Middlesex Superior Court a motion to withdraw his guilty plea on the grounds that his plea was not knowing and that he did not receive effective assistance of counsel. Specifically, he alleged in a supporting affidavit that the prosecutor misled him into thinking he would receive concurrent rather than consecutive sentences and credit for the time already spent in jail only if he pled guilty, when in fact the law did not permit consecutive sentences and automatically entitled him to the credit. Moreover, Flores alleged that his own attorney made false and deceptive representations about the prosecutor's ability to use a post-arrest statement of Flores against his co-defendants. Flores asserted that all of those misrepresentations induced him to plead guilty. His motion was denied without an evidentiary hearing on November 19, 1992.

On June 30, 1994, Flores filed a second motion to withdraw his plea, this time represented by counsel, on the same grounds as asserted in his first motion and, additionally, on the grounds that 1) prior to his plea, he had not received an adequate explanation of the felony murder rule or the theory of joint venture under which the Commonwealth intended to prosecute him, 2) his attorney promised that if Flores pled guilty he would file an appeal that would cause the charges to be dismissed and allow Flores to be "home before Christmas" and 3) he was not arraigned on two of the counts to which he pled guilty. Flores filed a supporting affidavit. On July 6, 1994, the Middlesex Superior Court denied that motion without an evidentiary hearing.

Flores appealed the denial of both motions to the Massachusetts Appeals Court ("MAC") on the grounds that:

1) it was an abuse of discretion to deny his first motion to withdraw his guilty plea without holding an evidentiary hearing,

2) it was an abuse of discretion to deny his second motion to withdraw his guilty plea without holding an evidentiary hearing because he had made a substantial evidentiary showing that his plea was not knowing and voluntary and that promises made to him by his attorney constituted ineffective assistance of counsel,

3) the plea was involuntary because the record does not show that the felony murder rule and the theory of joint venture were explained to him and he did not have a full understanding of the offense to which he offered his plea and

4) the failure to arraign Flores in a timely and proper manner on two of the charges rendered his plea to all of the charges involuntary.

The MAC affirmed the Superior Court's denial of Flores' motion to withdraw his guilty plea, stating that the colloquy at the plea hearing between the trial judge and Flores supported a finding that the plea was voluntary and, therefore, the trial judge acted within his discretion when he denied Flores' motions without holding evidentiary hearings. *Commonwealth v. Flores,* 38 Mass.App.Ct. 1130, 653 N.E.2d 209, slip op. at 2 (1995).

Flores filed an Application for Further Appellate Review with the Supreme Judicial Court which was denied on September 6, 1995. *Commonwealth v. Flores,* 421 Mass. 1101, 654 N.E.2d 1202 (1995).

Flores filed the instant petition on July 1, 1996 in which he challenges the voluntariness of his plea. On September 24, 1997 this Court accepted and adopted the Report and Recommendation of Magistrate Judge Swartwood denying the respondent's motion to dismiss the petition.

That decision construed Flores' petition as raising the following four grounds for relief:

Ground 1: The Superior Court abused its discretion when it denied without hearing Mr. Flores two motions for a new trial despite the fact that Mr. Flores submitted affidavits on the issue of whether his guilty plea was involuntary because he was induced by the prosecutor's promises that Mr. Flores would receive jail credits for time spent awaiting trial and that the prosecutor would recommend that he receive concurrent sentences if he pled guilty.

Ground Two: Since no opposing affidavits were submitted to controvert Mr. Flores' allegation that his attorney promised to file an appeal if he pled guilty and that he "would be home for Christmas", an evidentiary hearing should have been held on his second motion to withdraw his guilty plea.

Ground three: Mr. Flores was not properly instructed on the felony murder rule and the theory of joint venture and was thereby deprived of a full understanding of the basis of the charges to which he pled guilty.

Ground four: Mr. Flores was not arraigned on two of the charges to which he pled guilty.

## II. Legal Standard

A habeas corpus action initiated by a person in custody pursuant to a judgement of a state court is governed by 28 U.S.C. § 2254 of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under Section 2254(d) a federal court can only grant a writ of habeas corpus if the underlying state adjudication:

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Moreover, in a Section 2254 proceeding, "a determination of a factual issue made by a State court shall be presumed to be correct [and][t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

■ The First Circuit Court of Appeals has recently interpreted section 2254(d)(1) as requiring a federal habeas court to engage in a two-step analysis:

First, the habeas court asks whether the Supreme Court has prescribed a rule that governs the petitioner's claim. If so, the habeas court gauges whether the state court decision is "contrary to" the governing rule. In the absence of a governing rule, the "contrary to" clause drops from the equation and the habeas court takes the second step. At this stage, the habeas court determines whether the state court's use of (or failure to use) existing law in deciding the petitioner's claim involved an "unreasonable application" of Supreme Court precedent.

*O'Brien v. Dubois*, 145 F.3d 16, 24 (1st Cir.1998). A principle articulated by the Supreme Court will only trigger the "contrary to" clause of the subject standard if it "can fairly be said to require a particular result in a particular case." *Id.* at 25.

## III. Analysis

Although petitioner's four grounds for relief all essentially challenge the voluntariness of his guilty plea, each ground presents a different theory as to why the plea was involuntary and must therefore be considered separately. This Court, however, has previously construed grounds one and two in such a way that they do not directly challenge the voluntariness of the plea. Instead, the petitioner alleges that the trial court abused its discretion in not holding an evidentiary hearing to assist it

in determining whether his plea was voluntary.

Nevertheless, because all four grounds raise the common issue of the voluntariness of a guilty plea, it is proper to begin the analysis with a discussion of the Supreme Court's general pronouncements on that subject. A defendant's guilty plea, in order to comport with the due process requirements of the Federal Constitution, must be made knowingly, intelligently and voluntarily, with an understanding of the nature of the charges, the direct consequences of the plea and the trial rights being surrendered. *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). Furthermore, the plea must not be induced by threats or by misrepresentations such as promises by a prosecutor that were unfulfilled or unfulfillable when made. *Id.* at 755, 90 S.Ct. 1463.

Although a determination about the voluntariness of a plea is a question of federal law, the state court's underlying findings of fact, including inferences properly drawn from those facts, are presumed to be correct and the burden is on the petitioner to rebut that presumption. 28 U.S.C. § 2254(e)(1); *Parke v. Raley*, 506 U.S. 20, 35, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992). That presumption includes findings about the defendant's credibility. *Marshall v. Lonberger*, 459 U.S. 422, 431–32, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983) (interpreting 28 U.S.C. § 2254(d) prior to AEDPA's enactment).

## A. Grounds One and Two

In grounds one and two the petitioner alleges that the trial court abused its discretion when it denied his two motions for a new trial without holding evidentiary hearings. Those motions were filed pursuant to Mass.R.Crim.P. 30(b), which is the proper way to challenge the validity of a guilty plea. *Commonwealth v. Clerico*, 35 Mass.App.Ct. 407, 411, 620 N.E.2d 799 (1993); *Commonwealth v. De-Marco*, 387 Mass. 481, 440 N.E.2d 1282 (1982). Mass.R.Crim.P. 30(c)(3) states that a trial judge may decide such a motion without holding an evidentiary hearing "if no substantial issue is raised by the motion or affidavits." *See also Commonwealth v. Heffernan*, 350 Mass. 48, 53, 213 N.E.2d 399, *cert. denied*, 384 U.S. 960, 86 S.Ct. 1586, 16 L.Ed.2d 673 (1966). The decision on the motion as well as the decision on whether to hold an evidentiary hearing "is left largely to the sound discretion of the judge." *Commonwealth v. Stewart*, 383 Mass. 253, 257, 418 N.E.2d 1219 (1981) (citations omitted).

The trial court denied both motions without holding evidentiary hearings. In denying the first motion, the trial judge stated, "[t]he plea of guilty was under oath, and found beyond a reasonable doubt to be made voluntarily, with knowledge of its consequences, with an understanding of the nature of the charges." Endorsement order entered Nov. 19, 1992 (State Docket No. 20). In denying the second motion, the same trial judge stated, "[t]he court was and is still satisfied beyond a reasonable doubt that the guilty plea was made voluntarily with knowledge of its consequences and with an understanding of the nature of the charges. The Court does not believe the affidavit of Pablo Flores." Endorsement order entered July 6, 1994 (State Docket No. 27).

The MAC found that the trial judge did not abuse his discretion in denying the motions without holding a hearing. Its opinion quoted portions of Flores' plea hearing and concluded that the record "did not require but certainly warranted the judge's not crediting the defendant's affidavit." *Commonwealth v. Flores*, 38 Mass.App.Ct. 1130, 653 N.E.2d 209, slip op. at 2 (1995).

Neither the petitioner nor the respondent has suggested to this Court how to apply AEDPA to petitioner's claims in grounds one and two. The respondent, in fact, has misconstrued grounds one and two of the petition, apparently overlooking

the way in which Magistrate Judge Swartwood interpreted those grounds in his Report and Recommendation that was ultimately accepted and adopted by this Court. Specifically, the respondent's brief addresses petitioner's underlying challenge to the voluntariness of the plea rather than the issue of whether the trial judge was required to hold evidentiary hearings.

With respect to grounds one and two, neither party has cited, nor has this Court discovered, any Supreme Court precedent that prescribes a rule governing petitioner's claim. Because the Supreme Court's decisions regarding the voluntariness of guilty pleas do not dictate a particular result in the instant case, petitioner's claims must be analyzed under the second step of the *O'Brien* analysis: whether the state court's decision was an unreasonable application of existing Supreme Court precedent.

■ Under such an analysis, a writ will only issue if the petitioner can establish that the state court's decision was "objectively unreasonable," meaning that it was "so offensive to existing precedent, so devoid of record support or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes." *O'Brien*, 145 F.3d at 25. That standard is particularly demanding in the present case where 1) the law affords a great deal of discretion to the trial judge and 2) a state appellate court has determined that the trial judge did not abuse that considerable discretion.

This Court, as a habeas court, must examine the issue through a slightly different lens than the state appellate court. Rather than determine whether the trial court abused its discretion, this Court must determine whether the trial court's decision represented an "unreasonable application" of Supreme Court precedent.

■ The judge who denied the motions for a new trial was the same judge who presided over the case and accepted the petitioner's guilty plea. His finding about the credibility of Flores' affidavit is one of fact which is presumed to be correct. *Lonberger*, 459 U.S. at 434, 103 S.Ct. 843. The trial judge simply did not believe Flores's allegations about the prosecutor's promises and his own attorney's misrepresentations. The petitioner has failed to provide clear and convincing evidence in this habeas proceeding to rebut that presumption.

Accepting the trial judge's finding about credibility, this Court cannot say that his conclusion that Flores' motions failed to present a substantial issue justifying an evidentiary hearing was "so offensive to existing precedent, so devoid of record support or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes." *O'Brien*, 145 F.3d at 25. Furthermore, after reviewing the record and considering 28 U.S.C. § 2254(d)(2), this Court finds that the trial judge's decision was not "based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).[1]

Even if this Court were to construe grounds one and two as directly challenging the voluntariness of the plea, the petitioner would not be entitled to relief. The trial court's finding about petitioner's credibility is entitled to the same presumption of correctness whether it serves as the justification for not holding an evidentiary hearing or for concluding that the plea comported with the due process requirements. For the same reasons articulated above, this Court finds that the trial court's conclusions about the voluntariness of the guilty plea were not an "unreason-

---

1. Ground two specifically challenges the propriety of not holding an evidentiary hearing on an issue as to which the Commonwealth did not file any opposing affidavits. Mass. R.Crim.P. 30(b)(3) states that a moving party "shall" file an affidavit in support of a motion, and that the opposing party "may" file one as well, leading to the irrefutable conclusion that the failure to file an opposing affidavit has no bearing upon whether or not an evidentiary hearing must be held.

able application" of Supreme Court precedent. *O'Brien,* 145 F.3d at 24. Grounds one and two of the petition are therefore unavailing.

Construing ground two as a claim for ineffective assistance of counsel would lead to the same result. To prevail on a claim of ineffective assistance of counsel, petitioner must show that 1) "counsel's representation fell below an objective standard of reasonableness" and 2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). By that rationale Flores must demonstrate that he pled guilty based on advice from his counsel and that such advice was not "within the range of competence demanded of attorneys in criminal cases." *Tollett v. Henderson,* 411 U.S. 258, 266–67, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). Petitioner has failed to make any such showing.

**B. Ground Three**

In ground three, petitioner claims he was not properly instructed on the felony murder rule and the theory of joint venture and therefore did not fully understand the charges to which he pled guilty.

■ Supreme Court precedent establishes that a defendant's guilty plea should be deemed involuntary only when the defendant "has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." *Henderson v. Morgan,* 426 U.S. 637, 645 n. 13, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976) (quoted in *Lonberger,* 459 U.S. at 431–32, 103 S.Ct. 843). Because the precedent is not dispositive of the present case, this Court must consider whether the state court's decision represented an "unreasonable application" of that precedent.

■ The trial judge who accepted Flores' guilty plea is in a far better position than this Court to assess the plea and to evaluate Flores' assertions raised in his post-conviction affidavits that he did not understand the nature of the charges against him. As stated previously, the trial judge's conclusions about the credibility of those assertions is entitled to great deference and the petitioner has failed to rebut that presumption of correctness. The trial judge's conclusions are not "so offensive to existing precedent, so devoid of record support or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes." *O'Brien,* 145 F.3d at 25.

Moreover, after independently reviewing the record, this Court finds that the trial judge's decision was not "based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The record conclusively rebuts petitioner's contention that he was never properly instructed on the felony murder rule or the theory of joint venture. The following colloquy occurred at the plea hearing:

> THE COURT: Now, have you sat down with Mr. Rappaport and has Mr. Rappaport gone through each and every fact, detail and element of these offenses that the government would have to prove in order to prove you guilty?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Mr. Rappaport, have you done the same?
>
> MR. RAPPAPORT: Yes, Your Honor, I have explained each of the indictments to him, the elements of the offenses and in addition, Your Honor, I've had a discussion with Mr. Flores on the concept of joint venture in criminal law. And I believe he does understand what his—at least, what the government's theory of liability would be in this case.

(Plea Hr'g Tr. 8–9). The Judge also explained the concept of joint venture, albeit in the context of the armed robbery charge:

> THE COURT: Now, as far as armed robbery is concerned, the government

would have to prove four elements beyond a reasonable doubt. And it was— Mr. Rappaport has mentioned and I tell you, too, one of the theories of the government here—and I know this because your brother pled guilty yesterday, and also because of the pretrial motions—the government is going on a theory of joint venture. And Mr. Rappaport explained that to you?

THE DEFENDANT: Yes, he has.

THE COURT: And that's when two or more people join together in an agreement to commit a criminal offense and it requires two things: A sharing of the necessary intent for the completed crime. And also the physical act of being present there, by agreement, in a position to render aid if necessary. And to participate if required, by agreement. Do you understand sir?

THE DEFENDANT: Yes.

(Plea Hr'g Tr. 12). Ground three will not, therefore, afford relief.

### C. Ground Four

In ground four of the petition, Flores claims that he was not arraigned on two of the charges to which he pled guilty: armed robbery and assault and battery by means of a dangerous weapon. Those charges were in connection with the February 3, 1992 incident as to which Mr. Flores was indicted on August 3, 1992, but not arraigned until at least October 1, 1992. On the latter date there was a change of plea hearing for those charges and the charges stemming from the February 14, 1992 incident. Flores argues that, even if the reading of the charges at the plea hearing constituted a proper arraignment, the surprise and confusion caused by learning of those charges at the plea hearing pressured him into pleading guilty, thereby rendering the plea involuntary.

Mass.R.Crim.P. 7(d) provides that an "[a]rraignment shall consist of the reading of the charges to the defendant and the entry of the defendant's plea to those charges." Those requirements are substantively identical to the requirements of Fed.R.Crim.P. 10 upon which the state rule is based. See Mass.R.Crim.P 7 Reporter's Notes. Based on the transcript of the plea hearing, this Court is satisfied that Flores was properly arraigned on October 1, 1992 prior to pleading guilty. (Plea Hr'g Tr. 6)

The issue, therefore, becomes whether a delay of approximately eight weeks between the return of the indictment and the arraignment somehow rendered the plea involuntary. Neither party has cited, nor has this Court discovered, any Supreme Court decision that dictates a particular result in this case and therefore this Court must determine whether the delay offends Supreme Court precedent. *O'Brien*, 145 F.3d at 24.

In general, an arrested person must be arraigned before a judicial officer as quickly as feasible. The First Circuit Court of Appeals has held that a delay in arraignment does not require reversal of conviction unless the defendant can show prejudice resulting from the delay. *United States v. Butler*, 434 F.2d 243 (1st Cir. 1970) *cert. denied*, 401 U.S. 978, 91 S.Ct. 1207, 28 L.Ed.2d 328 (1971). Although *Butler* is clearly not Supreme Court precedent, the First Circuit has held that reference to lower federal court decisions "is appropriate in assessing the reasonableness vel non of the state court's treatment of the contested issue." *O'Brien*, 145 F.3d at 25. This Court will therefore apply the *Butler* standard requiring the petitioner to make an affirmative showing that he was prejudiced by the delay.

After carefully examining the record, this Court is satisfied that the conclusion of the MAC that the delay did not prejudice the petitioner or in any way render his plea involuntary are not "so offensive to existing precedent, so devoid of record support or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes." *O'Brien*, 145 F.3d at 25.

Ground four of the petition is therefore equally unavailing to the petitioner.

## ORDER

For the foregoing reasons, Flores' petition for a writ of habeas corpus is DENIED.

So ordered.