**Regina Ann HASTINGS, Petitioner,**

v.

**Joan YUKINS, Respondent.**

**No. Civ.01–CV–7136–DT.**

United States District Court,
E.D. Michigan,
Southern Division.

March 8, 2002.

Regina Hastings, Scott Correctional Facility, Plymouth, MI, pro se.

Brenda E. Turner, Michigan Department of Attorney General, Habeas Corpus Division, Lansing, MI, for respondent.

### OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

CLELAND, District Judge.

Regina Ann Hastings, ("petitioner"), presently incarcerated at the Scott Correctional Facility in Plymouth, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In her *pro se* application, petitioner challenges her conviction for one count of second degree murder.[1] For the reasons stated below, the petition for writ of habeas corpus will be denied.

### I. BACKGROUND

Petitioner was originally charged with one count of open murder, which arose out of the stabbing death of her husband in Fort Gratiot, Michigan on July 16, 1997.[2]

---

1. Mich.Comp.Laws § 750.317; Mich.Stat. Ann. § 28.549.

2. Under Michigan law, it is proper to charge a defendant with the crime of open murder.

Immediately after her arrest, petitioner was interviewed by mental health officials from the St. Clair County Community Mental Health Services. Petitioner told these officials that she was suffering from auditory hallucinations which were telling her to kill herself. Petitioner's Global Assessment of Functioning (GAF Scale), as defined by the Diagnostic and Statistical Manual Of Mental Disorders–IV (DSM–IV), was noted as 25 out of a scale ranging from 0–100. According to the DSM–IV, this GAF level indicated that petitioner's behavior was "considerably influenced by delusions or hallucinations or serious impairment in communication or judgment or inability to function in almost all areas." A report from the Port Huron Hospital Emergency Center dated July 25, 1997 indicates that petitioner was complaining of auditory hallucinations which were commanding her to hurt herself and to hurt other people. At the time of this interview, petitioner denied any homicidal ideation, but claimed that she was hearing voices and seeing "shadow-like people-demons-spots of things." Petitioner was diagnosed as having paranoid schizophrenia with suicidal ideation. Petitioner agreed to voluntarily commit herself and was placed in the Caro Regional Center on July 25, 1997. On August 19, 1997, she was transferred to the Center for Forensic Psychiatry.[3]

The psychiatric admission summary from the Center for Forensic Psychiatry, dated August 19, 1997 indicated that petitioner cooperated with her interview. Although she was aware that she was charged with murder, petitioner declined to discuss the case, informing the forensic

examiner that her attorney advised her not to say anything. When asked if it was her criminal defense attorney who so advised her, she said that it was not. Petitioner advised the forensic examiner that she had a history of mental illness. Petitioner informed the examiner that she had been in a deep depression prior to the murder and had attempted suicide in March of 1997 by taking an overdose of Paxil and Risperdal, two psychotropic medications that had been prescribed to her. Petitioner told the forensic examiner that voices inside her head had told her to kill herself. She also experienced visual hallucinations in the form of "shadow like people." Petitioner denied homicidal ideations at the time of this interview. The admission summary included a clinical diagnosis of Major Depressive Disorder, Single Episode, Severe with Psychiatric Features.[4]

The admission summary also detailed petitioner's history of mental illness based on several admission reports that the Forensic Center had received from Port Huron Hospital and Blue Water Mental Health Clinic. These reports confirmed that petitioner had attempted to commit suicide, had been diagnosed with a major depressive episode, and had been placed on 20 mg of Paxil and 1 mg of Risperdal. The reports also indicated that petitioner had complained of auditory hallucinations. IQ tests indicated that petitioner had a full scale IQ of 73, with a verbal IQ of 68 and a performance IQ of 80. Petitioner's GAF Scale was noted as 40 out of a scale ranging from 0–100 in a test performed on March 25, 1997.[5]

Such a charge gives a circuit court jurisdiction to try a defendant on first and second degree murder charges. *Taylor v. Withrow*, 154 F.Supp.2d 1037, 1039, fn. 2 (E.D.Mich. 2001) (*citing People v. McKinney*, 65 Mich. App. 131, 135, 237 N.W.2d 215 (1975)).

3. *See* Report from the Center for Forensic Psychiatry, pp. 13–14, attached to the petition for writ of habeas corpus.

4. *Id.* at pp. 14–15.

5. *Id.* at pp. 9–13.

Petitioner remained in the Forensic Center for Psychiatry for several months until a determination was made that she was mentally competent to stand trial. On December 4, 1997, a preliminary examination was conducted, after which petitioner was bound over for trial. Petitioner was subsequently referred back to the Forensic Center for a culpability determination. On May 6, 1998, the Forensic Center for Psychiatry issued a report which opined that petitioner met the statutory criteria for legal insanity at the time of the murder. The forensic examiners based this conclusion on petitioner's history of mental illness, along with the fact that she informed the examiners that she had auditory command hallucinations at the time of the murder which told her to kill her husband. The forensic examiners also noted that petitioner had not been taking her medications for two weeks prior to the killing.[6] The St. Clair County Prosecutor's Office sought a second forensic opinion from Dr. Charles Clark, who opined that petitioner was not legally insane at the time of the murder.

On October 8, 1998, petitioner pleaded guilty but mentally ill to second degree murder, in exchange for which the St. Clair County Prosecutor agreed to dismiss the open murder charge against petitioner. Petitioner's counsel indicated that this was the extent of the plea agreement and further indicated that he had met with petitioner on numerous occasions to discuss the case. Counsel indicated that he had filed a notice of insanity in this case and had discussed with petitioner the possibility of raising this defense at trial. Significantly, counsel mentioned that he had known petitioner for over a year and was comfortable with her mental competence to reflect on the matter and enter into the plea agreement. In talking with petitioner, counsel indicated that he was comfortable that she understood her rights and possible defenses in this case.[7]

Prior to accepting the plea, the trial court explained to petitioner that no one could promise her what her sentence would be. The trial court further advised petitioner that he would not accept a guilty plea if it was conditioned upon a specific sentence and informed petitioner that she would not be permitted to withdraw her plea simply because the sentence she received was different from what someone suggested her sentence might be. In response, petitioner indicated that she understood what the trial court was saying. Petitioner was advised that the maximum sentence that she could receive for the crime of second degree murder would be life in prison. Responding to questions from the court, petitioner denied that any other promises had been made to her other than what had been detailed in the plea agreement.[8]

The trial court also advised petitioner of the rights that she would be giving up by pleading guilty. Petitioner indicated that she understood the rights that she was waiving by entering her plea of guilty. The trial court specifically asked petitioner if she had any difficulty hearing or understanding what had taken place in court that day. Petitioner replied that she didn't think so. The trial court also asked if petitioner believed that there was anything about the plea, in terms of threats or promises, that she should make the court aware of. Petitioner indicated that there were not.[9] Defense counsel assisted petitioner with the factual basis by asking her if petitioner had taken a knife and stabbed her husband in the chest with the intent to

6. *Id.* at pp. 3–8; 19–22.

7. Plea Transcript, pp. 3–5.

8. *Id.* at pp. 6, 8, 10.

9. *Id.* at pp. 8–12.

do great bodily harm, which lead to his death. Petitioner responded affirmatively to these questions.[10]

On November 11, 1998, petitioner was sentenced to fifteen to thirty years in prison.[11] Petitioner's guidelines range under the Michigan Sentencing Guidelines was ninety-six to three hundred months, or eight to twenty five years.[12]

Petitioner subsequently moved to withdraw her plea of guilty on the grounds of leniency promised by defense counsel and lack of mental competency to enter the plea. Evidentiary hearings were held on petitioner's motion on August 12, 1999 and September 16, 1999. Petitioner's trial counsel testified that he had numerous contacts with petitioner during her criminal case. Trial counsel indicated that before petitioner had received psychiatric treatment at the Forensic Center and a determination had been made that petitioner was competent to stand trial, he was unable to get the assistance of, or communicate with petitioner. Counsel indicated that after petitioner was found competent to stand trial, she was able to assist in her defense and communicate with counsel. Counsel was aware that petitioner had been hearing voices and had been taking medication while at the St. Clair County Jail. Counsel indicated that initially the voices that petitioner heard were very strong, subsided after mental health treatment, and began to come back after petitioner was again incarcerated at the county jail. Counsel was not aware of any treatment or counseling that petitioner was receiving in the county jail. Counsel confirmed that petitioner always had these voices with her, although the medication controlled them to a certain degree.

Nonetheless, it was counsel's opinion that petitioner was mentally competent at the time that she pleaded guilty.[13]

When asked about a sentence agreement that petitioner might have believed existed, counsel admitted that they had spoken about sentencing ranges and possible sentences and acknowledged that in general terms, petitioner could have believed that he told her that there was a potential for her to receive a sentence of eight to ten years. Counsel admitted preparing a sentence brief, in which he asked the trial court to sentence petitioner to a minimum sentence of eight to ten years. However, counsel denied ever telling petitioner that there was a sentence agreement that she would receive eight to ten years as a minimum sentence or that he had guaranteed her that she would receive this sentence if she pleaded guilty. Counsel, in fact, indicated that the probation department had recommended a sentence of life in prison.[14]

Petitioner testified that she had been evaluated two times for competency, the last time being a week or so prior to the entry of her guilty plea. Petitioner claimed that it was her understanding from speaking with counsel that if she pleaded guilty, she would receive eight to ten years on the minimum sentence. Petitioner indicated that prior to entry of her guilty plea, she was aware that there was a forensic center report which indicated that she had a defense of insanity. However, petitioner testified that she was willing to plead guilty in order to obtain a minimum sentence of eight to ten years, rather than risk going to trial on a first degree murder charge. Petitioner admitted that the trial court asked her at the time of her guilty plea whether any other promises had been

---

10. *Id.* at pp. 10–11.

11. Sentence Transcript, p. 20.

12. *Id.* at p. 7.

13. Evidentiary Hearing Transcript, August 12, 1999, pp. 7–10, 18, 25–27, 30, 39.

14. *Id.* at pp. 10–11, 16, 23–24.

made to her, but claimed that her attorney had advised her to tell the court that no other promises had been made. Petitioner claimed that when she returned for sentencing, she was shocked when she received a minimum sentence of fifteen years. Petitioner claimed that she would not have pleaded guilty had she known that she was going to receive fifteen years in prison. Petitioner claimed that she was induced to plead guilty by her attorney's representation that she would receive no more than eight to ten years in prison.[15]

Petitioner indicated that the homicide that she was charged with occurred as a result of her hearing voices. Petitioner testified that she had been hospitalized for a period of time, and was later placed on medication at the St. Clair County Jail. However, petitioner indicated that she did not believe that the medication that she was receiving at the time was strong enough. Petitioner claimed that she was delusional while at the St. Clair County Jail and testified that she was continuing to hear voices every day. Petitioner also claimed that there was an incident in which she attempted suicide in the St. Clair County Jail by saving up her medicine and then attempting to take a overdose. Petitioner claimed that she was still hearing voices at the time of the evidentiary hearing, although she indicated that they were not as bad as before.[16]

On cross-examination, petitioner admitted that her mental illness did not prevent her from having a clear memory of what transpired at her guilty plea hearing. Petitioner also acknowledged that she knew what she was saying at the time of her guilty plea. Petitioner insisted that her attorney promised her that she would receive eight to ten years if she pleaded guilty. She further indicated that her understanding of counsel's advice and his promise that she would receive eight to ten years on the minimum sentence was not affected by mental illness or voices. Petitioner appreciated the benefit of the plea bargain and thought that it was a good one. Although petitioner was aware that she had a potential insanity defense, she indicated that she couldn't handle going to trial and testified that she had been interested in resolving the matter through a plea bargain. Petitioner acknowledged that the trial court informed her that it would not accept a plea agreement conditioned upon a specific sentence, but claimed that her attorney advised her to lie in response to the trial court's questions as to whether there had been any promises made to her. Petitioner conceded that her decision to tell the trial court that there was no specific sentence in this case was a rational and knowing decision that had not been affected by her mental illness or by the voices. Although petitioner claimed that she was hearing voices on the day of her guilty plea, she indicated that the voices were merely advising her to listen to her lawyer because he had her best interests at heart.[17]

Assistant Prosecutor Joseph McCarthy indicated that petitioner had the same calm demeanor at the time of the guilty plea that she had at the evidentiary hearing, appeared to understand the proceedings, and acted appropriately. McCarthy further indicated that the plea took place only after the prosecutor's office had obtained a second forensic opinion which indicated that petitioner was not legally insane at the time of the murder.[18]

---

**15.** Evidentiary Hearing Transcript, September 16, 1999, pp. 39–46.

**16.** *Id.* at pp. 47–50.

**17.** *Id.* at pp. 52, 56–57, 60–64, 70.

**18.** *Id.* at pp. 78, 79, 84–85, 95.

At the conclusion of the hearing, the trial court found that notwithstanding petitioner's testimony, petitioner had not been induced by false promises of leniency that led her to plead guilty. The court did not believe that counsel, whom the court described as being a vigorous and competent defense attorney, would deliberately or mistakenly mislead his client. The court concluded that there was nothing in the file or the record from which the court could conclude that petitioner had been induced to plead guilty by false promises of leniency. As far as being delusional or incompetent, the trial court concluded that there was nothing before the trial court that would lead the court to believe that petitioner did not understand what was happening (when she pleaded guilty). The court denied the motion to withdraw the guilty plea.[19]

Petitioner's conviction and sentence were affirmed on appeal. *People v. Hastings*, 223388 (Mich.Ct.App. February 23, 2000); *1v. den.* —— Mich. ——, 636 N.W.2d 135 (2001). Petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

I. The trial court committed reversible error when it denied Regina Hastings's motion to set aside a plea of guilty where the plea was induced by false promises of leniency made to her by trial counsel.

II. The trial court committed reversible error when it denied Regina Hastings's motion to set aside a plea of guilty because at the time she took the plea, she was not competent, rendering her plea involuntary.

III. Defendant is entitled to resentencing where the trial court imposed a sentence that was disproportionately severe when taking into consideration the facts surrounding Ms. Hastings and the circumstances of the crime.

## II. STANDARD OF REVIEW

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Harpster v. State of Ohio*, 128 F.3d 322, 326 (6th Cir.1997).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. An "unreasonable application" occurs when the state court identifies the correct legal principle from a Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 412–413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411, 120 S.Ct. 1495.

---

**19.** *Id.* at pp. 105–106.

## III. DISCUSSION

### A. Claims #1 and 2. The plea withdrawal claims.

Petitioner's first two claims have been consolidated for purposes of judicial economy. In her first claim, petitioner argues that the trial court should have permitted her to withdraw her guilty plea, where the plea was induced by false promises of leniency made to her by her attorney. In her second claim, petitioner alleges that her guilty plea was involuntary, because she was mentally incompetent at the time that she entered the plea.

Petitioner raised these claims with the Michigan appellate courts. These courts rejected petitioner's appeal in standard unexplained orders. When a state court has not articulated its reasoning when denying a constitutional claim, a federal habeas court is obligated to conduct an independent review of the record and applicable law and determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented; however, that independent review is not a full *de novo* review of the claims, but remains deferential because a habeas court cannot grant relief unless the state court decision is not in keeping with the strictures of the Antiterrorism and Effective Death Penalty Act (AEDPA). *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir.2000); *Morse v. Trippett*, 102 F.Supp.2d 392, 402 (E.D.Mich.2000). Thus, where a state court decides a constitutional issue by form order or without an extended discussion, as was the case here, a habeas court should focus on the result of the state court's decision, applying the aforementioned standard. *Harris v. Stovall*, 212 F.3d at 943, fn. 1.

In the present case, the trial court denied petitioner's claims, finding that there was no factual basis either for petitioner's claim that her defense counsel made false promises with regards to her sentence if she pleaded guilty or for her claim that she was not competent to plead guilty. A federal court must apply the presumption of correctness to state court findings of fact for habeas corpus purposes unless clear and convincing evidence is offered to rebut this presumption. *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001); *Robinson v. Stegall*, 157 F.Supp.2d 802, 815–816 (E.D.Mich.2001); 28 U.S.C. § 2254(e)(1).

The trial court in this case first found that trial counsel did not make any promises or assurances to petitioner regarding her possible sentence if she pleaded guilty. Although the question of whether a plea of guilty was voluntary is a question of law, a state court's underlying findings of fact on this issue are presumed correct on habeas review. *Hunter v. Bowersox*, 172 F.3d 1016, 1022 (8th Cir.1999) (*citing to Marshall v. Lonberger*, 459 U.S. 422, 431–432, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983)). This includes findings as to a habeas petitioner's credibility. *Id.* In the present case, the trial court's denial of petitioner's motion to withdraw her guilty plea as involuntarily made was not objectively unreasonable under the AEDPA, since it was based upon the trial court's findings as to the credibility of petitioner and her defense counsel, which are presumed to be correct. *See Flores v. Marshall*, 53 F.Supp.2d 509, 515–516 (D.Mass. 1999). Because petitioner has not offered any clear and convincing evidence to rebut this presumption, she has failed to establish that her attorney induced her into pleading guilty by making false promises as to the sentence length.

Moreover, assuming that defense counsel did, in fact, promise petitioner a sentence of eight to ten years, this would

still not entitle petitioner to habeas relief. A plea of guilty must be knowingly and voluntarily made. The defendant must be aware of the "relevant circumstances and likely consequences" of his plea. *Hart v. Marion Correctional Institution*, 927 F.2d 256, 257 (6th Cir.1991). The defendant must also be aware of the maximum sentence that can be imposed for the crime for which he or she is pleading guilty. *King v. Dutton*, 17 F.3d 151, 154 (6th Cir.1994). When a petitioner brings a federal habeas petition challenging his plea of guilty, the state generally satisfies its burden by producing a transcript of the state court proceedings showing that the plea was made voluntarily. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir.1993). The factual findings of a state court that the guilty plea was properly made are generally accorded a presumption of correctness. Petitioner must overcome a heavy burden if the federal court is to overturn these findings by the state court. *Id.* Additionally, a habeas petitioner bears a heavy burden of rebutting the presumption that his or her guilty plea, as evinced by the plea colloquy, is valid. *Myers v. Straub*, 159 F.Supp.2d 621, 626 (E.D.Mich.2001). Finally, absent extraordinary circumstances, or some other explanation as to why defendant did not reveal other terms when specifically asked to do so by the trial court, a plea agreement consists of the terms revealed in open court, where the trial court scrupulously follows the required procedure for taking the defendant's plea. *Baker v. United States*, 781 F.2d 85, 90 (6th Cir.1986).

 It is only when the consensual character of a guilty plea is called into question that the validity of a guilty plea may be impaired. *Mabry v. Johnson*, 467 U.S. 504, 508–509, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984). A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his or her own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (i.e. bribes). *Mabry v. Johnson*, 467 U.S. at 509, 104 S.Ct. 2543 (quoting *Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)). A federal court will uphold a state court guilty plea if the circumstances demonstrate that the defendant understood the nature and consequences of the charges and voluntarily chose to plead guilty. *See Cunningham v. Diesslin*, 92 F.3d 1054, 1060 (10th Cir.1996); *Myers v. Straub*, 159 F.Supp.2d at 627.

In the present case, the trial court specifically advised petitioner that it would not accept a plea agreement conditioned upon petitioner receiving a specific sentence. In response to this comment, petitioner indicated that she was aware that she could not later withdraw her guilty plea if she received a sentence that she didn't like. The trial court asked petitioner several times whether there were other promises or inducements made to get her to plead guilty and petitioner replied that there were none. The trial court even offered petitioner an opportunity at the conclusion of the plea hearing to ask the court any questions or bring to the court's attention any promises or threats that she might have received to plead guilty.

 A state court's proper plea colloquy will cure any misunderstandings that a petitioner may have had about the consequences of the plea. *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir.1999). Thus, a claim of ineffective assistance of counsel predicated on allegedly misleading information given by counsel about the terms of a plea agreement can never constitute an

"extraordinary circumstance" under *Baker* when the court conducts a proper, clear, and thorough plea colloquy. *Id.*

■ Although petitioner claims that she understood the plea agreement to guarantee her a minimum sentence of eight to ten years, habeas relief should not be granted by crediting a petitioner's subjective version of her understanding of the plea bargain. *See Nichols v. Perini,* 818 F.2d 554, 558–559 (6th Cir.1987); *See also Bair v. Phillips,* 106 F.Supp.2d 934, 940–941 (E.D.Mich.2000). Petitioner would therefore not be entitled to the withdrawal of her plea based on her allegation that her attorney gave her erroneous sentencing information where petitioner was given the correct sentencing information by the sentencing judge at the time of the plea and petitioner expressly denied the existence of other representations or promises. *See United States v. Todaro,* 982 F.2d 1025, 1029–1030 (6th Cir.1993); *see also Garrison v. Elo,* 156 F.Supp.2d 815, 827–828 (E.D.Mich.2001) (alleged promise from defense attorney that defendant would receive a minimum three year sentence if he pleaded guilty to criminal sexual conduct in the third degree did not render the defendant's plea involuntary, even though he received a minimum sentence of three and a half years, where the defendant was told several times on the record by the trial court that there was no sentence agreement and the defendant indicated that no one had promised him a lenient sentence). Petitioner is therefore not entitled to habeas relief on her first claim.

■ Petitioner's second claim that her guilty plea was involuntary because of her alleged mental incompetence must also be rejected. As an initial matter, the state trial court made a factual finding that petitioner was competent at the time she entered her guilty plea. A determination by a state trial court that a habeas petitioner was competent to stand trial is a finding of

fact that is entitled to the presumption of correctness for purposes of federal habeas review. *Maggio v. Fulford,* 462 U.S. 111, 117, 103 S.Ct. 2261, 76 L.Ed.2d 794 (1983); *Mackey v. Dutton,* 217 F.3d 399, 412 (6th Cir.2000). A state court's conclusion regarding a defendant's competency to plead guilty is also entitled to the presumption of correctness in habeas corpus proceedings. *Hunter v. Bowersox,* 172 F.3d at 1020–1021.

■ A defendant may not be put to trial unless he or she has a sufficient present ability to consult with his or her lawyer with a reasonable degree of rational understanding and a rational as well as a factual understanding of the proceedings against him or her. *Cooper v. Oklahoma,* 517 U.S. 348, 354, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996); *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). The competency standard for pleading guilty is the same as the competency for standing trial and is not a higher standard. *Godinez v. Moran,* 509 U.S. 389, 398, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993). In a federal habeas proceeding attacking a state court conviction on the ground that the petitioner was mentally incompetent at the time that the guilty plea was accepted, petitioner must show that he or she was incompetent in fact at the time of the plea. *See Theriot v. Whitley,* 18 F.3d 311, 313 (5th Cir.1994).

■ Competency claims can raise issues of both substantive and procedural due process. A petitioner may make a procedural competency claim by alleging that the trial court failed to hold a competency hearing after the defendant's mental competency was put in issue. To prevail on the procedural claim, a petitioner must establish that the state trial judge ignored facts which raised a "bona fide doubt" regarding petitioner's competency to stand trial. *Walker v. Attorney General for the*

*State of Oklahoma,* 167 F.3d 1339, 1343 (10th Cir.1999) (internal citations omitted). A petitioner can make a substantive competency claim by alleging that he was, in fact, tried and convicted while mentally incompetent. A petitioner raising a substantive claim of incompetency is entitled to no presumption of incompetency and must demonstrate his or her incompetency by a preponderance of the evidence. *Id.* at 1344. To succeed in stating a substantive incompetency claim, a petitioner must present evidence that creates a "real, substantial, and legitimate doubt" as to his or her competency to stand trial. *Walker,* 167 F.3d at 1347.

■■■■■ Evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinions on competence to stand trial are all relevant in determining whether further inquiry on a defendant's mental state is required, but even one of these factors standing alone, may in some circumstances, be sufficient to trigger a further inquiry into a defendant's mental fitness to stand trial. *Drope v. Missouri,* 420 U.S. 162, 180, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). However, there are no fixed or immutable signs which invariably indicate the need for a further inquiry to determine the fitness to proceed. *Id.* There must be some manifestation or conduct on petitioner's part to trigger a reasonable doubt as to his or her competency. *Matheney v. Anderson,* 60 F.Supp.2d 846, 861 (N.D.Ind.1999); *aff'd and remanded* 253 F.3d 1025 (7th Cir. 2001). A trial court may rely on its own observations of the defendant's comportment to determine whether a defendant is competent to stand trial. *Bryson v. Ward,* 187 F.3d 1193, 1201 (10th Cir.1999). A full competency hearing is necessary only when a court has a reason to doubt a defendant's competency to stand trial. *Id.* at 1202; *Godinez v. Moran,* 509 U.S. at 401, n. 13, 113 S.Ct. 2680.

■■■ As an initial matter, the court notes that at the time of the guilty plea, petitioner's counsel indicated on the record that he had discussed the plea bargain with petitioner and believed that she was competent to enter a plea of guilty. Because mental competency is primarily a function of a defendant's role in assisting his or her attorney in conducting the defense, the defendant's attorney is in the best position to determine whether the defendant's competency is suspect. *Watts v. Singletary,* 87 F.3d 1282, 1288 (11th Cir.1996). Therefore, the failure of a defense attorney to raise the competency issue, while not dispositive, is evidence that the defendant's competency is not in doubt. *Id.* In the present case, the trial court did not abuse its discretion in failing to order a competency hearing before accepting petitioner's guilty plea, where defense counsel informed the court at the time of the plea colloquy that he was satisfied that petitioner was competent to proceed with the guilty plea. *See United States v. General,* 278 F.3d 389, 396 (4th Cir.2002).

Moreover, petitioner has offered insufficient evidence which would call into doubt her competency at the time that she pleaded guilty. In support of her claim that she was mentally incompetent to plead guilty, petitioner points to her history of mental illness, her use of antipsychotic medications prior to entry of the plea, her low IQ, the finding by the forensic examiners that she was legally insane at the time that she committed the crime charged, and the fact that she attempted to commit suicide in the St. Clair County Jail in January of 1998.

■■■■ Not every manifestation of mental illness demonstrates incompetency to stand trial. Neither low intelligence, mental deficiency, nor the fact that a defendant has been treated with anti-psy-

chotic drugs can automatically be equated with incompetence. *Burket v. Angelone*, 208 F.3d 172, 192 (4th Cir.2000); *See also Miles v. Dorsey*, 61 F.3d 1459, 1474 (10th Cir.1995). Although petitioner's insanity plea and her psychiatric history are consistent with her claim that she suffered from mental illness, these facts do not necessarily suggest that because of this mental illness, petitioner was incapable of understanding the proceedings and assisting her defense. *See Jermyn v. Horn*, 266 F.3d 257, 293 (3rd Cir.2001). The only psychiatric evidence offered by petitioner in support of her claim that she was incompetent to plead guilty is the forensic report from May 6, 1998 which found that she was legally insane at the time that the crime was committed. However, the forensic report does not indicate that petitioner was not competent to stand trial or to enter a plea of guilty. A defendant's criminal responsibility at the time of an alleged criminal offense is distinct from the issue of competency to stand trial. *Jackson v. Indiana*, 406 U.S. 715, 739, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972). Incompetency involves a defendant's mental state at the time of trial, whereas the insanity defense involves the defendant's mental state at the time that the offense was committed. *See United States v. Gold*, 790 F.2d 235, 238 (2d Cir.1986). Although the forensic report from May 6, 1998 opines that petitioner was legally insane at the time that the murder was committed, the forensic report does not address the issue of petitioner's mental capacity or competence at the time of her plea; thus, this report is insufficient to call into question petitioner's competency. *See Felix v. Virgin Islands Government*, 702 F.2d 54, 57 (3rd Cir. 1983).

Petitioner finally points to a suicide attempt that she made at the St. Clair County Jail in January of 1998 as evidence that she was incompetent to enter her plea of guilty in October of 1998.[20] Not every suicide attempt, however, will create a bona fide doubt concerning a defendant's competency to stand trial. *Contreras v. Rice*, 5 F.Supp.2d 854, 864 (C.D.Cal.1998) (*quoting United States v. Loyola–Dominguez*, 125 F.3d 1315, 1318–1319 (9th Cir. 1997)). In *Contreras*, the federal habeas court held that a defendant's pretrial suicide attempt was insufficient to show that the defendant was incompetent to stand trial where the attempt occurred three months before trial and there was no evidence of self destructive behavior on the defendant's part prior to trial. *Id.*

■ In the present case, petitioner's suicide attempt occurred eight to nine months prior to the entry of her guilty plea. There is no suggestion that petitioner made any subsequent attempts to commit suicide. Petitioner has therefore failed to establish that she was incompetent to plead guilty on October 6.

In the present case, a review of petitioner's guilty plea transcript shows that she was "lucid and articulate" at the time that she entered her plea of guilty and was responsive to the trial court's questions. Petitioner has presented no evidence that she was not in possession of her mental faculties at the time that she entered her plea of guilty. Thus, her "after-the-fact" incompetency claim is without merit. *See United States v. Calvin*, 20 Fed.Appx. 452, 453 (6th Cir.2001). Petitioner's second claim must fail.

### B. Claim # 3. The disproportionate sentencing claim.

■ In her final claim, petitioner alleges that her sentence of fifteen to thirty years for the crime of second degree murder was disproportionate, because the trial court failed to take into account the fact

**20.** *See* Report from the Center for Forensic Psychiatry, p. 16.

that she was mentally ill at the time that she committed the murder.

A sentence imposed within the statutory limits is not generally subject to habeas review. *Townsend v. Burke,* 334 U.S. 736, 741, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948); *Cook v. Stegall,* 56 F.Supp.2d 788, 797 (E.D.Mich.1999). A sentence within the statutory maximum set by statute does not normally constitute cruel and unusual punishment. *Austin v. Jackson,* 213 F.3d 298, 302 (6th Cir.2000). Generally, federal habeas review of a state court sentence ends once the court makes a determination that the sentence is within the limitation set by statute. *Dennis v. Poppel,* 222 F.3d 1245, 1258 (10th Cir.2000). The offense of second degree murder carries up to life in prison. Petitioner received a sentence of fifteen to thirty years in prison on this offense. Because petitioner's sentence was within the bounds set by the second degree murder statute, this court will not disturb the sentence on habeas review. *Welch v. Burke,* 49 F.Supp.2d at 992, 1009–1010 (E.D.Mich.1999) (upholding life sentence for second degree murder).

The U.S. Constitution does not require that sentences be proportionate. In *Harmelin v. Michigan,* 501 U.S. 957, 965, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), a plurality of the U.S. Supreme Court concluded that the Eighth Amendment does not contain a requirement of strict proportionality between the crime and sentence. The Eighth Amendment forbids only extreme sentences that are grossly disproportionate to the crime. *Harmelin,* 501 U.S. at 1001, 111 S.Ct. 2680.

Successful challenges to the proportionality of a particular sentence in non-capital cases are "exceedingly rare". *Rummel v. Estelle,* 445 U.S. 263, 272, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). Federal courts will therefore not engage in a proportionality analysis except where the sentence imposed is death or life imprison-

ment without parole. *See Seeger v. Straub,* 29 F.Supp.2d 385, 392 (E.D.Mich. 1998). A claim that a sentence is imposed in violation of Michigan's sentencing law does not state a claim for relief in a habeas proceeding where there is no claim that the sentence violates the cruel and unusual punishment clause of the Eighth Amendment. *Hanks v. Jackson,* 123 F.Supp.2d 1061, 1075 (E.D.Mich.2000). Petitioner's claim that her sentence is disproportionate under Michigan law thus would not state a claim upon which habeas relief can be granted. *Whitfield v. Martin,* 157 F.Supp.2d 758, 761 (E.D.Mich.2001); *Atkins v. Overton,* 843 F.Supp. 258, 260 (E.D.Mich.1994).

Petitioner's claim that the sentence was disproportionate is based on her argument that the trial court failed to consider her mental illness at the time of the crime as mitigating evidence. The United States Supreme Court has refused to extend the doctrine of individualized sentencing to noncapital cases. *Harmelin v. Michigan,* 501 U.S. at 995–996, 111 S.Ct. 2680. In *Harmelin,* the U.S. Supreme Court held that imposition of a mandatory life sentence without parole without any consideration of any mitigating factors, such as the defendant's work history, did not constitute cruel and unusual punishment. *Id.* at 994–995, 111 S.Ct. 2680. Because petitioner had no constitutional right to an individualized sentence, no constitutional error would occur if the state trial court failed to consider mitigating evidence on her behalf at sentencing. *See Scrivner v. Tansy,* 68 F.3d 1234, 1240 (10th Cir.1995).

In the present case, not only was petitioner's sentence of fifteen to thirty years within the maximum penalty set by statute, it was also within the sentencing guidelines range of eight to twenty five years. In Michigan, sentences within a correctly scored guidelines range are presumptively proportionate. *People v. Bai-*

*ley,* 218 Mich.App. 645, 647, 554 N.W.2d 391 (1996). Because petitioner's sentence was within the statutory range for the offense of second degree murder, as well as within the recommended sentencing guidelines range, she is not entitled to habeas relief on this claim.

### IV. CONCLUSION

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is DENIED WITH PREJUDICE.

### JUDGMENT

In accordance with the March 8, 2002, order denying Petitioner's application for writ of habeas corpus under 28 U.S.C. § 2254,

IT IS ORDERED AND ADJUDGED that judgment is entered for Respondent Joan Yukins and against Petitioner Regina Ann Hastings. Dated at Detroit, Michigan, this 8 day of March 2002.